UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRANDON MOCKBEE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01825-JMS-CSW |
| | ) | |
| PRETORIOUS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

### ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

Brandon Mockbee has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 2.] He challenges a prison disciplinary proceeding in which he was found guilty of violating a rule related to body fluid and fecal waste and sanctioned with a suspended sentence of 37 days' lost good-time credits, a suspended demotion of a credit-earning class, and another non-custodial sanction not relevant to this case. [Filing No. 2-2 at 1.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Mockbee's due process rights, so his habeas Petition is **DENIED**.

## I.
### LEGAL BACKGROUND

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support

1

the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also* *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974). For matters of fact, "the state may not benefit from § 2254(e)(1)'s presumption of correctness in appeals from prison disciplinary proceedings." *Piggie v. McBride,* 277 F.3d 922, 926 (7th Cir. 2002). And for matters of law, a court "review[s] the [disciplinary board's] legal determinations de novo." *Scruggs,* 485 F.3d at 938. Nonetheless, the Court "will not reweigh the evidence underlying the hearing officer's decision. Instead [the Court] confine[s] [its] inquiry to whether any reliable evidence exists to support the conclusions drawn by the hearing officer. Once found, [the Court] will not look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348.

## II.
### FACTUAL BACKGROUND

Mr. Mockbee has submitted a lengthy filing compiling testimony, medical descriptions, and documentation from the prison proceedings. The Court summarizes his version of events below to provide context for his Petition, notes material disputes, but caveats that it is not finding that Mr. Mockbee's version of the facts is necessarily true.

### A. Mr. Mockbee's Medical Condition

Mr. Mockbee suffers from cirrhosis and hepatic encephalopathy. [Filing No. 2-2 at 5-6.] Mr. Mockbee's cirrhosis makes his liver unable to "eliminate excess protein," allowing the protein to accumulate in his bowels. [Filing No. 2-2 at 5.] That excess protein is then "turned into ammonia." [Filing No. 2-2 at 5.] If Mr. Mockbee's ammonia level "becomes elevated," it affects his brain, making him "stuporous," "unresponsive," "sedated," and "confused." [Filing No. 2-2 at 5-6.] "To maintain normal alertness and cognition," Mr. Mockbee must have "frequent daily bowel movements," "usually 3 to 4 times per day." [Filing No. 2-2 at 5.]

2

To produce those bowel movements, Mr. Mockbee takes a substance called "lactulose," which is a "type of carbohydrate which is not absorbed into the body, which causes it to pull extra water into the intestine and thereby cause the bowels to move." [Filing No. 2-2 at 6.] Mr. Mockbee "needs to take lactulose . . . three time[s] a day." [Filing No. 2-2 at 6.] For "[t]he usual adult, oral dosage of lactulose . . . is 2 to 3 tablespoons." [Filing No. 2-2 at 34.] But people suffering from cirrhosis "need to take larger doses." [Filing No. 2-2 at 5.] So "[i]t can sometimes be a fine line between too much lactulose and too little lactulose to get the desired results without excessive stooling or incontinence." [Filing No. 2-2 at 6.] For Mr. Mockbee's condition, treatment "generally need[s] to err on the side of too many bowel movements (and possible incontinence), rather than risk not clearing the ammonia due to too few bowel movements." [Filing No. 2-2 at 6.]

A downside to treatment is that lactulose can cause "bowel urgency" or "stool incontinence." [Filing No. 2-2 at 5.] And "[e]xcessive dosage can lead to diarrhea." [Filing No. 2-2 at 37.] "This is common to anyone needing to take lactulose, but especially those needing it for cirrhosis, who need to take larger doses." [Filing No. 2-2 at 5.] Lactulose thus poses a risk that Mr. Mockbee "is unable to get to a toilet quickly enough," "which may occur at any time." [Filing No. 2-2 at 5.] Due to Mr. Mockbee's medical condition, he has "used the bathroom on [himself] many times." [Filing No. 2-2 at 4.]

B.  **The February 12, 2022 Incident**

On February 12, 2022, Mr. Mockbee was "transported back from [an] outside hospital to" the New Castle Correctional Facility ("the prison"). [Filing No. 2-2 at 10.] Upon his arrival, Mr. Mockbee "stated in medical" that "he had not had a bowel movement." [Filing No. 2-2 at 4.] So EMT John Foy gave Mr. Mockbee 4 cups of lactulose. [Filing No. 2-2 at 4.] According to Mr. Mockbee, 4 cups of lactulose is "more than the normal prescribed dosage" and EMT Foy provided

3

the lactulose "with no doctor's order." [Filing No. 2-2 at 42.] Afterwards, Mr. Mockbee was then "quarantine[d]" into a restrictive housing unit. [Filing No. 2-2 at 10.] The restrictive housing unit had no running water and "no toilet," unlike the infirmary, where Mr. Mockbee alleges "others were quarantined." [Filing No. 2-2 at 10; Filing No. 2-2 at 43.] According to Mr. Mockbee, he stayed in a holding cell "for hours," and when he needed to have a bowel movement, he "had to track down staff to obtain toilet paper." [Filing No. 2-2 at 23.] Mr. Mockbee said that he spoke with officers "about his need to use a toilet," and "pleaded for officers to simply cuff him and escort him to another cell that had a toilet, but [the] officers refused." [Filing No. 2-2 at 24.] One of those officers, Officer C. Smith, disputes this account, stating that Mr. Mockbee was in a recreational area called the "rec cage." [Filing No. 10-11 at 1-2.] Officer Smith states that Mr. Mockbee "could leave the cage to go to" a cell with a "fully functioning toilet." [Filing No. 10-11 at 2.] According to Officer Smith, Mr. Mockbee did not want to go to that cell; instead, he wanted to go to cell #324. [Filing No. 10-11 at 2.] Mr. Mockbee allegedly refused Officer Smith's offer and told Officer Smith, "If I don't go to cell 324 I'm going to f**k you up fata**." [Filing No. 10-1 at 1.] Officer Smith states he "did not permit [Mr.] Mockbee to use the toilet . . . due to a concern he might attempt to pass contraband." [Filing No. 10-11 at 2.]

Regardless of the exact exchange of words or Mr. Mockbee's exact location, no one disputes the ultimate fact, that Mr. Mockbee did not reach a toilet and ultimately defecated into a plastic lunch bag and onto the prison floor. [Filing No. 2-2 at 10 (Mr. Mockbee's version); Filing No. 10-1 at 1 (Officer Smith's version).] Each party avers that security-camera footage supports their version of events. [Filing No. 2-2 at 1 (finding that the "video clearly supports" Mr. Mockbee's guilt); Filing No. 2-2 at 3 (contending that the video would show that prison staff "wouldn't get [Mr. Mockbee] out of the cage").]

### C. The Disciplinary Proceeding

Officer C. Smith submitted his Conduct Report supporting his version of events, that Mr. Mockbee had a chance to reach a different cell but declined:

> I Ofc. C. Smith witnessed offender Mockbee . . . def[e]cate and urinate[] in the 300 Rec Cage into a Bag and onto the floor. The offender had seve[r]al opp[o]rt[u]n[i]ties to go to Cell 322 in the RHU but offender refused and stated "If I don't go to cell 324 I'm going to f*** you up fata**."

[Filing No. 10-1 at 1.]

Two days after Mr. Mockbee's bowel-movement incident, he was charged with Offense A-123, "Body Fluid and Fecal Waste." [Filing No. 2-2 at 3.] Before the hearing, Mr. Mockbee requested the written statements of three witnesses, EMT Foy, Captain Gard, and Officer Harty. [*See* Filing No. 2-2 at 3.] EMT Foy testified about the medical effects of lactulose and what happened after the lactulose was administered:

> Offender Mockbee . . . had stated in medical after returning from his trip, that he had not had a bowel movement. 4 cups of lactulose were giv[en] to offender Mockbee. Capt. Gard was informed [that] he was ready to go to RHU and would need to be placed in a cell []right [a]way d[ue to] the lactulose and the need for a bathroom and TP. Mockbee [h]as used the bathroom on [himself] many times [due] to his medical condition.

[Filing No. 2-2 at 4.]

Captain Gard testified that he did not "determine how many rolls of toilet paper" Mr. Mockbee received and that he had "never witnessed [Mr.] Mockbee defecate on himself," though he had "been told" that Mr. Mockbee had done so in the past and that EMT Foy said Mr. Mockbee "probably need[s] more than one roll of toilet paper due to his condition." [Filing No. 10-5 at 4.] Officer Harty apparently refused to testify. [Filing No. 10-5 at 1 (next to "written statement in lieu of witness appearing at hearing," Officer Harty writing "no" and providing no other answer).]

Mr. Mockbee also requested "camera review" of footage covering the "RHU-300 rec cage" from 11:30 AM to 4:00 PM, which would allegedly show that the prison officials "wouldn't get

5

[him] out of the cage." [Filing No. 2-2 at 3.] A prison official reviewed the video footage outside of Mr. Mockbee's presence because the prison "does not want the offenders to know the camera angle, dead spots, quality of the video recordings or where to hide out of the camera's view." [Filing No. 2-2 at 2.] The summary describes footage spanning from 11:30 AM to 4:30 PM and describes prison officials apparently talking to Mr. Mockbee and directing him toward another cell:

> Video shows [Mr. Mockbee] going into the Rec. cage at camera time 14:04. Officer C. Smith is seen several times talking to offender Mockbee and pointing down the range toward the cells. Sgt. Moore is seen talking to offender Mockbee and pointing down range toward the cells. At camera time 16:27 Officer C. Smith is seen taking photos inside the Rec. Cage. Camera does not show inside the Rec. Cage, just the door and the 300 range [of cells.] Camera does not record audio.

[Filing No. 2-2 at 2.] This footage was submitted to the Court for *in camera* review. [Filing No. 14.]

According to the disciplinary hearing report, at the disciplinary hearing, Mr. Mockbee testified that he "took lactulose, [and he] did poop on the bag [but] not on the floor. [EMT] Foy gave [him] 4 cups of lactulose. [He] should not have got 4 cups at 1 time. [He] told them [he] had to go to a medical cell." [Filing No. 2-2 at 1.]

Based on the Conduct Report, evidence, witness statements, and the video which "clearly support[ed]" the conduct report, Mr. Mockbee was found guilty and punished with a suspended penalty of 37 days' lost good-time credit, a suspended demotion of one credit class, and another penalty not relevant to this case. [Filing No. 2-2 at 1.]

Mr. Mockbee later filed an offender grievance and classification appeal, which were both denied as not a "grievance issue." [Filing No. 2-2 at 10-12.] Mr. Mockbee also filed a disciplinary hearing appeal, which was denied. [Filing No. 10-8 at 1-2.] The disciplinary appeal was Mr.

Mockbee's "final appeal," thus he was not permitted to "appeal the guilty finding on this conduct to a higher authority." [Filing No. 10-8 at 1.]

### D.     Later Developments

A few months after Mr. Mockbee's disciplinary hearing, Dr. Mark Stine, the prison's Medical Director, issued to the prison a directive for "Special Needs / Urgent Orders." [Filing No. 2-2 at 7.]  In his order, Dr. Stine provided a "[c]lassification order" to grant Mr. Mockbee a wheelchair and a low bunk because of his seizures.  [Filing No. 2-2 at 7.]  Dr. Stine also requested that the prison "please allow unlimited access to [the] restroom due to his need to use high doses of lactulose for his liver condition (which is intended to increase his bowel movements)." [Filing No. 2-2 at 7.]  Dr. Stine explained to the prison that Mr. Mockbee's difficulties "need[] to be taken into consideration," and requested that prison officials "grant him some latitude in needing to use the bathroom frequently." [Filing No. 2-2 at 5.]

Mr. Mockbee has since petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, requesting that his good-time credits be restored, [Filing No. 2.]  The Respondent has conceded that the suspended demotion in credit class is no longer enforceable, [Filing No. 10 at 5 n.2], so at stake is the suspended loss of good-time credits.  *See Cochran v. Buss*, 381 F.3d 637, 640 (7th Cir. 2004) (holding that "the suspended sentence of loss of good time credit . . . [is] cognizable in a habeas action").

### III.
#### ANALYSIS

Mr. Mockbee's Petition refers generally to his attachments documenting his arguments from prior proceedings.  [Filing No. 2 at 3-5.]  Because he is proceeding without counsel, "his habeas petition is entitled to a liberal construction," *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004), so the Court recounts Mr. Mockbee's arguments as relevant to his Petition.  Mr.

7

Mockbee has argued that the evidence was insufficient to support his conviction, that he was charged with the offense as a form of retaliation, and that prison officials violated his right to be free from cruel and unusual punishment. The Court addresses each argument in turn.

### A.      Sufficiency of the Evidence

Mr. Mockbee argues that he "suffers [from] conditions of confusion and problems with rational thinking when placed in conditions of stress, and that large doses of the drug lactulose cause[] uncontrolled diarrhea." [Filing No. 2-2 at 15.] He notes that the reason he needs lactulose is to "treat or prevent certain conditions" that affect his brain. [Filing No. 2-2 at 15.] Based on his alleged mental handicaps from his medical condition, Mr. Mockbee argues that "there is nothing in the report of Officer C. Smith that [he] had any harmful or evil intent when he had a bowel movement in the holding cell that he was placed in." [Filing No. 2-2 at 14; Filing No. 2-2 at 16.] On the contrary, Mr. Mockbee argues that the "deck [was] stacked against" him because the prison staff "were fully aware of [his] intestinal illness yet placed him in a cell for holding (quarantine) with no toilet, while the other prisoner(s) returning from the same outside trip from [the] hospital were placed in the infirmary for their quarantine period." [Filing No. 2-2 at 16.]

The Respondent argues that "[t]here was some evidence supporting the guilty finding." [Filing No. 10 at 7.] She notes that Mr. Mockbee's argument "admits that he did not use a toilet and defecated on the floor." [Filing No. 10 at 7.] The Respondent argues that Officer C. Smith's "conduct report states that [Mr.] Mockbee had several opportunities to go to cell 322, before relieving himself in the rec cage, but that he refused to go to that particular cell, and called the officer derogatory and inappropriate names." [Filing No. 10 at 10.] The Respondent argues that the prison reviewed video footage that "support[s] that the reporting officer did offer him the opportunity to use a working toilet." [Filing No. 10 at 10.] The Respondent states that Mr. Mockbee's argument "concerning his lack of intent due to his medical conditions and the alleged

8

failure of the hearing officer to consider the same is misplaced because the offense does not include a knowing or intentional requirement." [Filing No. 10 at 10.]

Mr. Mockbee did not file a reply.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison,* 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard, *Moffat v. Broyles,* 288 F.3d 978, 981 (7th Cir. 2002), and a Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision," *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999). Under this standard, "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455-56 (emphasis added). "[C]ourts 'are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson*, 188 F.3d at 786 (quoting *Hill*, 472 U.S. at 455-56).

In this case, there are two ways to commit the offense of Body Fluid and Fecal Waste. The first is subject to strict liability, and the second requires intent:

> [1] Placing body fluid or fecal waste in a location unintended for the hygienic disposal of body fluid or fecal waste . . .
>
> [2] and/or placing body fluid or fecal waste in a location with the intent that another person will touch or otherwise come in contact with the body fluid or fecal waste.

[Filing No. 10-10 at 3 (A-123: "Body Fluid and Fecal Waste").]

The Report of the Disciplinary Hearing details that Mr. Mockbee was charged generally under A-123 and did not specify which provision he violated. Nonetheless, the offense contains the words "and/or," indicating that either way to commit the offense is sufficient to be found guilty.

9

Thus, notwithstanding Mr. Mockbee's potentially medically impaired intent, the Court focuses on the strict liability portion of the offense. For that, there is indeed sufficient evidence. As the Respondent notes, Mr. Mockbee's argument in his defense presupposes that he defecated onto the floor, albeit most directly into a bag, presumably "a location unintended for the hygienic disposal of body fluid or fecal waste." [Filing No. 10-10 at 3.]

Mr. Mockbee's sufficiency of the evidence argument does not provide a basis for relief.

**B.    Retaliation**

Mr. Mockbee argues that Officer C. Smith wrote his conduct report "as a form of retaliation." [Filing No. 2-2 at 17.] He states that Officer Smith "allege[d] that [Mr.] Mockbee also urinated in his report to bolster [the] conduct report" even though "video and photos of evidence do[] not depict any urine." [Filing No. 2-2 at 17.] Mr. Mockbee argues that Officer Smith simply made "bogus" claims that he called Officer Smith derogatory names and threatened him using profanity. [Filing No. 2-2 at 17.] He supports his argument by stating that he was "intentionally placed in a holding cell for housing for hours without a toilet and running water" and was allegedly not allowed to go to another cell, which "forced" Mr. Mockbee to have "no choice but to defecate in his holding cell." [Filing No. 2-2 at 17.]

The Respondent argues in response that "[a]lthough prisoners have a right to be free from arbitrary actions of prison officials, the protections against arbitrary disciplinary actions grounded in retaliation or fraudulent charges are the procedural due process requirements of *Wolff*." [Filing No. 10 at 7.] The Respondent states that as long as "the *Wolff* requirements are followed and the disciplinary decision is supported by 'some evidence,'" even if there were retaliation or fraudulent charges, "federal habeas relief is generally not available." [Filing No. 10 at 7-8.]

Mr. Mockbee did not file a reply.

"Prisoners have a right to be free from arbitrary actions by prison officials," including false disciplinary actions based on retaliation. *Burton v. Davis*, 41 F. App'x 841, 845 (7th Cir. 2002). However, "the protection from such actions is found in the procedures mandated by due process." *Id.* Therefore, "retaliatory motive in the filing of a disciplinary charge is not a ground for relief if the subsequent disciplinary proceedings are held in accordance with due process." *Lee v. Berge*, 14 F. App'x 690, 693 (7th Cir. 2001); *see also McPherson*, 188 F.3d at 787 (holding "that as long as procedural protections are constitutionally adequate, [the Court] will not overturn a disciplinary decision based solely because evidence indicates the claim was fraudulent"). If the procedural due process requirements of *Wolff* are satisfied, a reviewing court's role "is limited to determining whether there was sufficient evidence to support the [hearing officer]'s decision." *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987) (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984)). Mr. Mockbee's only argument regarding procedural due process relates to the sufficiency of the evidence. As the Court has already held, there was at least some evidence to convict Mr. Mockbee of his offense. Regardless, Mr. Mockbee's allegations against the officer are baseless; he provides no motive or reason for the officer to retaliate against him, and a view of the defecation photo indeed appears to show characteristic yellowing contents of urine. [Filing No. 10-2 at 2.]

Mr. Mockbee is not entitled to habeas relief based on his retaliation argument.

C. **Cruel and Unusual Punishment**

Mr. Mockbee has argued that being administered four cups of lactulose and being put in a cell without running water and a toilet was "cruel and unusual punishment." [Filing No. 2-2 at 41.] Regarding that argument, he specifically asks "for relief . . . to avoid having to file [a] § 1983 . . . civil claim. . . . [He] feel[s] that [he] ha[s] enough grounds [to show] that [his] constitutional rights were violated to lodge a federal complaint if [he] cannot resolve this issue" at the administrative level. [Filing No. 2-2 at 41.]

11

The Respondent did not respond to this argument.

It is not clear whether Mr. Mockbee is arguing that the way he was treated violates federal law or whether he seeks to invalidate the strict liability of the fecal-waste rule itself because it violates federal law. Regardless of which Mr. Mockbee intends, neither is a proper basis for habeas relief. As Mr. Mockbee has alluded to, such arguments must be pursued under § 1983. The Court recognizes that often "the facts alleged could form the basis for both a section 1983 and a habeas claim." *Viens v. Daniels*, 871 F.2d 1328, 1331 (7th Cir. 1989). But the nature of the claim and the relief sought determine which statute is the proper vehicle for suit. As the Seventh Circuit has held, "[f]or prisoners, the difference between a civil rights action and a collateral attack is easy to describe. Challenges to conditions of confinement . . . such as . . . deliberate indifference to serious medical needs[] fall under § 1983," *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003), or "another statute authorizing damages or injunctions," *Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000), such as the Americans with Disabilities Act or Rehabilitation Act. *See generally McDaniel v. Syed*, No. 20-2946, ___ F.4th ___, 2024 WL 4197357 (7th Cir. Sept. 16, 2024). "If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement," as Mr. Mockbee has done, "that . . . in no way precludes him from simultaneously litigating in federal court, under § 1983, his claim relating to the conditions of his confinement," *Preiser v. Rodriguez*, 411 U.S. 475, 499 n.14 (1973), in which case "normal principles of res judicata would apply." *Wolff*, 418 U.S. at 554 n.12.

It is true that the Court could recharacterize a civil-rights claim masking as a habeas claim if "the complaint names the correct defendant and does not face other procedural obstacles." *Gibson v. Sullivan*, 2023 WL 2947436, at *1 (7th Cir. Apr. 14, 2023). Mr. Mockbee has not shown that he has met these requirements. *See Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005)

12

(observing "there are pitfalls of different kinds for prisoners using the wrong vehicle," such as being subject to the three-strikes rule, "somewhat different exhaustion requirements," and the need to identify different defendants). Thus, as the Seventh Circuit has held, "the district court should evaluate cases as the plaintiffs label them." *Id.* Pursuant to Mr. Mockbee's labeling, his claim for cruel and unusual punishment is not cognizable under § 2254, so the prudent course of action is simply to deny his Petition "without prejudice to a civil action under § 1983." *Moran*, 218 F.3d at 652 (directing the district court to dismiss the habeas corpus suit without foreclosing future suit under § 1983); *accord Tisthammer v. Walton*, 547 F. App'x 781, 781 (7th Cir. 2013) (observing that the district court "declined to recast [the petitioner's] action as a civil rights complaint, explaining that a civil rights complaint would subject him to a higher filing fee and a possible 'strike' if the court determined it to be frivolous").

Mr. Mockbee's cruel and unusual punishment argument does not provide a basis for habeas relief. But Mr. Mockbee is not foreclosed from filing a new suit under § 1983. If Mr. Mockbee wishes to pursue such a claim, he must do so using the form Complaint. Local Rule 8-1. The Clerk is **DIRECTED** to mail the Court's form § 1983 Complaint to Mr. Mockbee's address listed in the distribution.

## IV.
### Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Mockbee to the relief he seeks. Accordingly, Mr. Mockbee's Petition for a Writ of Habeas Corpus, [2], is **DENIED** and the action

**DISMISSED**. The Clerk is **DIRECTED** to mail the Court's form § 1983 Complaint to Mr. Mockbee's address listed in the distribution. Final Judgment consistent with this Order shall issue.

Date: 10/2/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BRANDON MOCKBEE
262691
PLAINFIELD – CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
ben.jones@atg.in.gov

14